The defendant, John M. Clinton (defendant), appeals from a jury verdict against him for just over $1 million. The claims against him arose out of his actions with respect to the estate of his father, John P. Clinton (father), and included claims for (1) unlawful interference with an expected gift, (2) undue influence, and (3) conversion. We affirm.
1. Background. We set forth the material facts as the jury reasonably could have found them. The plaintiff's decedent, Gail M. Fournier, was the father's companion and girl friend for thirty-eight years, until the father died in May of 2014. Fournier was not the defendant's mother. For years prior to his death, the father expressed his desire to divide his estate between Fournier and the defendant.[4] He took a number of actions toward that end. For example, the father held a number of bank accounts and investment accounts, and he named Fournier, the defendant, or both as beneficiaries or joint tenants on these various accounts. In addition, after meeting with his lawyer in September of 2013, on October 10, 2013, the father executed a will dividing his estate, essentially fifty-fifty, between Fournier and the defendant (other than tangible personal property, which was entirely assigned to Fournier).
The trial focused on a series of events that began in October, 2013. The father's health had been in gradual but serious decline for many years, beginning with a stroke in 2005. From 2005 to October, 2013, Fournier was his primary caregiver, and by October of 2013 the father was not capable of caring for himself. The defendant did not live with the father during this time, and saw him only occasionally.
On October 14, 2013, about five days after the father executed his first will, Fournier was diagnosed with Stage IV pancreatic cancer. Unable to continue to care for the father, Fournier contacted the defendant and asked him to take over the father's care. At that time Fournier also gave the defendant the financial records regarding the father's various accounts. Shortly thereafter, on October 29, 2013, the father executed a new power of attorney appointing the defendant.
Over the following weeks, from October through November 11, 2013, the defendant eliminated Fournier as a beneficiary on all accounts where she was so named. The defendant also removed the entire amount ($719,960.69), from a Liberty Bay Credit Union (Liberty Bay) account on which both he and Fournier were joint tenants along with his father-and transferred that amount to a new account in his name and his father's name, only. From the evidence, the jury could reasonably find that the father knew of some of these transfers in advance, but not others. For example, the father had accounts at Fidelity Investments for which Fournier and the defendant were designated beneficiaries; the father issued the direction to remove Fournier as a beneficiary of the Fidelity accounts, and he did so in person, at Fidelity's offices in Burlington. However, there was evidence that the father did not know in advance of the defendant's actions with other accounts-for example, the Liberty Bay account.
During this period the defendant also arranged for a new attorney, to assist in the preparation of a new will. On November 8, 2013, the father executed a new will that left his entire estate to the defendant.
Fournier brought this suit in August, 2014, after the father died in May of that year. As indicated, the complaint contained claims, inter alia, for: (1) unlawful interference with an expected gift, (2) undue influence, and (3) conversion. After a five-day jury trial, the jury answered special interrogatories in which they found separately for Fournier on each of the three claims. The jury also answered a single special interrogatory on damages, which did not differentiate between the three claims, and awarded the plaintiff $1,039,807.62. The defendant appeals, inter alia, the denial of his motions for directed verdict and for judgment notwithstanding the verdict (JNOV).
2. Discussion. The defendant asserts a variety of errors, but to succeed on this appeal the defendant must successfully attack the verdict on each of the three counts. If any one of the counts survives the defendant's arguments, the judgment stands. Here we only need address the claim for unlawful interference with an expected gift, as the defendant has raised no meritorious challenge to the verdict as to that count.
We review a denial of a JNOV motion de novo. See Phelan v. May Dept. Stores Co., 443 Mass. 52, 55 (2004) (reviewing court applies same standard as motion judge). The question is whether " 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn' in favor of the nonmoving party." Ibid., quoting from Poirier v. Plymouth, 374 Mass. 206, 212 (1978). In so reviewing we do not reweigh the evidence; our job is to determine whether a reasonable jury could have reached the result challenged. Poirier, 374 Mass. at 213.
Massachusetts law recognizes a claim for unlawful interference with an expected gift, upon proof of the following elements: (1) the defendant must intentionally interfere with the plaintiff's expectancy in an unlawful way, (2) the plaintiff must have a legally protected interest, and (3) "[t]he plaintiff must show that the defendant's interference acted continuously on the donor until the time the expectancy would have been realized." Labonte v. Giordano, 426 Mass. 319, 320-321 (1997). Here the plaintiff's theory was that Fournier had legally protected interests because she was a named beneficiary (or in some instances, joint tenant) of the will and the various bank accounts, and that the defendant unlawfully interfered with those expectations through breaches of fiduciary duty or undue influence that continued until the father's death.
The defendant asserts (1) that there was insufficient evidence of undue influence, (2) that there was insufficient evidence that the defendant's interference operated continuously until the father's death, and (3) that the cause of action should not have been recognized because the plaintiff had "other available remedies." There was no error.
As to whether the plaintiff proved that the defendant interfered unlawfully, there was sufficient evidence for the jury to so find.[5] "Unlawful" interference includes actions, inter alia, that constitute undue influence or breaches of fiduciary duty.[6] See Labonte, 426 Mass. at 321 n.4. Here the defendant was a fiduciary-he had his father's durable power of attorney to conduct all affairs, including all finances. See Cleary v. Cleary, 427 Mass. 286, 295-296 (1998) ; Matter of the Estate of Sharis, 83 Mass. App. Ct. 839, 842 (2013). He used that power of attorney for his own benefit, inter alia, by removing Fournier as a beneficiary of multiple accounts and by transferring all the money out of the Liberty Bay joint account.
The defendant argues that the father knew he was taking these actions in advance, and that he was acting at the father's direction. The evidence on that point was in sharp conflict, however; Fournier testified that she was the one who told the father of the transfers from the Liberty Bay account, and that the father did not know of the transfers and was upset by Fournier's news. The conflict was for the jury to decide.
In any event, there was sufficient evidence for the jury to find that even if the father knew of all of the defendant's actions, the defendant had exerted undue influence. The father was infirm, unable to care for himself, and dependent upon the defendant for decisions as to his care. There was evidence the father was suffering from dementia. Furthermore, the evidence showed that there was an abrupt change in the planned disposition of the father's estate immediately after the defendant gained power of attorney. From the facts adduced at trial the jury could determine that the father had chosen a particular course for the disposition of his estate, but that his will had been overborne by the defendant once the father was placed in the defendant's care and the defendant was given power of attorney. See Matter of the Estate of Sharis, 83 Mass. App. Ct. at 845 ("In many instances a finding of undue influence rests largely on circumstantial evidence, since direct evidence of such influence is often difficult to establish" [quotation omitted] ).
There also was sufficient evidence to find that the defendant's undue influence continued until the father's death. The defendant held the power of attorney throughout the period from October of 2013 until the father's death, and he was responsible for making the decisions as to the father's care. There was evidence that the father's health and mental state continued to decline throughout this time. While there was also evidence-notably, the independent investigation provoked by the father's comment that the defendant was stealing from him-that could have been taken to demonstrate that the father was not continuously influenced, that was for the jury to decide on all the evidence. We cannot say that the defendant's undue influence was interrupted as a matter of law.
Finally, there is no merit to the defendant's contention that the unlawful interference claim fails because the plaintiff had another remedy available through the Probate and Family Court. To the contrary, the plaintiff's tort claim was entirely proper. Nothing in Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Ct., 448 Mass. 15, 21 (2006), suggests otherwise.
Since there was sufficient evidence for the jury to find for the plaintiff on the count for unlawful interference with an expected gift, the judgment must be affirmed. The damages award did not differentiate between the three counts, and the defendant has raised no objection as to the form of the special interrogatory on damages. Since here the verdict on the unlawful interference claim is sufficient to sustain the damages award,[7] we need not address the defendant's arguments that attack the verdicts on either of the other two counts.[8] ,[9]
Judgment affirmed.
Order denying motion for judgment notwithstanding the verdict affirmed.

The father's only other child, a daughter, died in 2010.

The defendant also suggests, in a single phrase, that Fournier did not have a sufficient expectancy interest to be protected by a claim for unlawful interference. The statement is insufficient to preserve the argument, see, e.g., Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011), but in any event, Fournier satisfied this element given her status as named beneficiary of the original will and named beneficiary or joint tenant of the various accounts. See Monach v. Koslowski, 322 Mass. 466, 469 (1948) (plaintiff was named beneficiary of will).

The defendant frames his argument as a failure to prove "undue influence." However, a person can commit "unlawful" interference by means other than undue influence-for example, by breaching a fiduciary duty. We understand the defendant to be arguing that the plaintiff failed to show any "unlawful" actions.

We note that as to the conversion count the defendant was a joint tenant of the Liberty Bay account, which he was accused of converting. There is a serious question as to whether a joint tenant can be found to convert funds in an account to which they are a joint tenant. We need not decide the issue, because the jury's verdict is independently supported by the verdict on the unlawful interference count. But see Heffernan v. WollastonCredit Union, 30 Mass. App. Ct. 171, 177 (1991) ("A party to a Massachusetts joint bank account ... has the right to withdraw all the funds in a joint account, or any portion of them").

The defendant's claim that the judge erred in excluding testimony of Helene Clinton (father's former wife) as to the father's relationship with Fournier is without merit. There was no offer of proof from which this argument could be evaluated. See Mass.R.A.P. 8(c), as amended, 378 Mass. 932 (1979).

The plaintiff's request for appellate attorney's fees and costs is denied.